IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VITO DRAGONE, JR. and LAWRENCE A. WOLFE, JR., Designated Trustees of the Southwestern Pennsylvania and Western Maryland Area Teamsters & Employers Pension Fund,<br><br>  Plaintiffs,<br><br>  vs.<br><br>BC CONCRETE OF CUMBERLAND, INC., et al.<br><br>  Defendants. | Civil Action No. 2:21-cv-244 |

**MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' MOTION TO DISMISS**

Defendants BC Concrete of Cumberland, Inc., BTA Concrete, LLC, BTA Limestone, LLC, Weimer Chevrolet of Cumberland, Inc., Weimer Factory Auto Outlet, Inc, Weimer Holding, LLC, Weimer Brothers, Inc., d/b/a Weimer Chrysler Dodge Jeep Ram, Weimer Chevrolet, Inc, d/b/a Weimer Chevrolet, Weimer Cycles, Inc. and Weimer Ford, Inc. (collectively, "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby file this Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint, and in support state as follows:

I.   INTRODUCTION

In this action, Defendants, ten separate businesses, find themselves sued by the Trustees of a Teamsters pension fund despite having never employed a Teamster. Indeed, although Plaintiffs admit that their cause of action arises out of a duty contained in a collective bargaining

1

agreement with Teamsters Local No. 453, none of the Defendants have or ever had a collective bargaining agreement with any union.  Despite that, Plaintiffs Vito Dragone, Jr. and Lawrence A. Wolfe, Jr., Designated Trustees of the Southwestern Pennsylvania and Western Maryland Area Teamsters & Employers Pension Fund (the "Fund") attempt to hold Defendants liable for withdrawal liability to the Fund pursuant to the terms of a Collective Bargaining Agreement ("CBA") with a different company.  To get around this obvious failing, Plaintiffs assert that Defendants are employers withdrawing from a pension plan to which they were never a party under a theory of common control and/or successorship-in-interest.  The Complaint, however, utterly fails to allege any facts to support these claims.  Therefore, since Plaintiffs have failed to allege any facts which nudge their claims from conceivable to plausible, Defendants request that the Complaint be dismissed.

## II.  FACTS[1]

The Fund is a multiemployer pension plan pursuant to Section 4001(a)(3) of the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. §1301(a)(3), administered from an office located in Uniontown, Pennsylvania. Compl. ¶ 4, 7. BC Concrete of Cumberland, Inc. ("BC Concrete") is a corporation organized and doing business in the state of Maryland. Compl. ¶ 8.  BC Concrete entered into an arms-length purchase of the assets of Cumberland Concrete Corporation ("Cumberland Concrete") which closed on or about August 25, 2017.  Compl. ¶ 19-20.[2]

---

[1] Defendants do not necessarily agree with the accuracy of the facts alleged by Plaintiffs and acknowledge that in reviewing the legal sufficiency of a complaint at the motion to dismiss stage, this Court must assume all well-pleaded facts are true.  *See Emp. Trustees of W. Pennsylvania Teamsters & Emps. Welfare Fund v. Union Trustees of W. Pennsylvania Teamsters & Emps. Welfare Fund*, No. CV 19-388, 2020 WL 4339427, at *2–3 (W.D. Pa. July 28, 2020).

[2] There is no allegation that there was any common ownership or control of these two entities.

On or about April 11, 2018, the Fund issued a demand for withdrawal liability to BC Concrete, alleging that BC Concrete was Cumberland Concrete's successor and that BC Concrete's liability to the Fund was $3,217,859.  Compl. ¶ 27.  Cumberland Concrete was previously a party to a CBA with the Teamsters Local No. 453 (the "Union"), providing a pension fund on behalf of its unionized employees.  Compl. ¶ 18.  In its April 11th letter, the Fund advised BC Concrete that it had the right to request review of its liability assessment by filing an appeal in arbitration.  BC Concrete timely requested review and disputed the withdrawal liability assessment on July 9, 2018 pursuant to 29 U.S.C. § 1399(b)(2)(A) (Section 4219(b)(2)(A) of the MPPAA).  Compl. ¶ 29.  Specifically, BC Concrete challenged the Fund's claim that BC Concrete is Cumberland Concrete's successor.  *Id.*

Following the Fund's direction, on February 12, 2019, BC Concrete timely filed a Demand for Arbitration with the American Arbitration Association ("AAA"), which was assigned Case No. 01-19-0000-4712.  Compl. ¶ 30.  On August 6, 2020, BC Concrete's counsel submitted a brief to the Arbitrator asserting that the Fund could not establish that BC Concrete was a successor-in-interest to Cumberland Concrete.  Ex. A to Compl. at 2-3.   On or about November 25, 2020, during a conference call with the Arbitrator, the Fund and BC Concrete, BC Concrete advised that it would not participate in paying for the arbitration, having no contract or other source of obligation.  BC Concrete took, and currently takes, the position that it was not a successor-in-interest to Cumberland Concrete and was not an employer for purposes of withdrawal liability.  *Id.*  As a result, the Arbitrator issued an Order on December 4, 2020 dismissing the Arbitration with prejudice for failure to participate, without ruling on the merits of the successorship issue.  *Id*; Compl. ¶ 31.

Herein, Plaintiff claims that BC Concrete and Defendants BTA Concrete, LLC, BTA Limestone, LLC, Weimer Chevrolet of Cumberland, Inc., Weimer Factory Auto Outlet, Inc, Weimer Holding, LLC, Weimer Brothers, Inc., d/b/a Weimer Chrysler Dodge Jeep Ram, Weimer Chevrolet, Inc, d/b/a Weimer Chevrolet, Weimer Cycles, Inc. and Weimer Ford, Inc. (collectively, the "Non-BC Concrete Defendants") are jointly and severally liable to the Fund for the assessed withdrawal liability. Compl. ¶ 33. The Fund further requests that this Court enforce the Arbitrator's Order and Final Award dated January 20, 2021 against the Defendants for $161,752.50 for the costs of the Arbitration and the Fund's attorney's fees. Compl. ¶ 35-36.

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims pled in a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss, a complaint must set forth a "'claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 195, 167 L.Ed. 2d 929 (2007)); *see* Fed R. Civ. Pro. 12(b)(6). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

"[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the

4

claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). The Court of Appeals for the Third Circuit has instructed that a court reviewing the sufficiency of a complaint must take three steps. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The court of appeals explained:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Id. See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth") (internal citations omitted)).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). A plaintiff must set forth "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of the elements of the claim for relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016); *Trzaska v. L'Oreal USA, Inc.*, 865 F.3d 155, 162 (3d Cir. 2017). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

5

## IV.     ARGUMENT

**A. Count I of Plaintiffs' Complaint Alleging Defendants Are Jointly and Severally Liable for Assessed Withdrawal Liability Fails to State a Claim Upon Which Relief May Be Granted.**

Pursuant to the MPPAA, when a contributing "employer" withdraws from participation in a multiemployer pension fund, the employer is responsible for its pro rata share of unfunded vested benefits. *Teamsters Pension Tr. Fund of Philadelphia & Vicinity v. Headley's Exp. & Storage Co.*, No. CIV. A. 92-5688, 1993 WL 189933, at *2 (E.D. Pa. June 3, 1993)(internal citations omitted). *See also* 29 CFR § 4204.1(a).  The MPPAA permits the trustees of a pension plan to assess "withdrawal liability" against an employer that "prematurely ceases making payments into" the plan. *Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Kero Leasing Corp.*, 377 F.3d 288, 294 (3d Cir. 2004) (internal citations omitted). However, only an employer as defined by the statute may be liable for withdrawal payments. *Bd. of Trustees of Trucking Emps. of N. Jersey Welfare Fund, Inc. - Pension Fund v. Centra*, 983 F.2d 495, 502 (3d Cir. 1992).  For purposes of the MPPAA, "employer" includes businesses "under common control" with the actual employer on the withdrawal date.  *Teamsters Loc. 469 Pension Fund & the Bd. of Trustees Thereof v. J.H Reid Gen. Contractors*, No. CV1506185KMJBC, 2020 WL 6129590, at *4 (D.N.J. Oct. 16, 2020).  Whether an entity is an "employer" within the meaning of the MPPAA is a legal question exclusively reserved exclusively to the courts.  *Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 142 (3d Cir. 1997).

The doctrine of successorship liability provides an exception from the general rule that a company purchasing the assets of another company does not acquire the seller's liabilities.  *New Jersey Bldg. Laborers' Statewide Benefit Funds & Trustees Thereof v. Demza Masonry LLC*, No. 18CV9607PGSLHG, 2019 WL 6493944, at *6 (D.N.J. Dec. 3, 2019).  In order to state a claim

for relief under the successor liability doctrine, a plaintiff must allege facts showing (1) that the buyer had notice of withdrawal liability prior to the asset sale; and (2) that there is sufficient evidence of continuity of operations between the buyer and the seller. *RP Baking LLC v. Bakery Drivers & Salesmen Loc. 194 & Indus. Pension Fund*, No. CIV.A. 10-3819 ES, 2012 WL 1079633, at *3–4 (D.N.J. Mar. 30, 2012). In determining whether a company is a successor-in-interest, the court must look to the totality of the circumstances to ascertain whether there is a "substantial continuity" between the two companies, and consider the overall fairness in applying the doctrine. *Demza Masonry LLC*, 2019 WL 6493944, at *6.

1. <u>Plaintiffs have not sufficiently pled that BC Concrete or any of the Defendants are an "employer" for purposes of withdrawal liability.</u>

To state a plausible claim for relief against Defendants for withdrawal liability, Plaintiffs must allege that Defendants are an "employer" for purposes of withdrawal liability. *Centra* at 502. Plaintiffs have not alleged that Defendants are directly liable for withdrawal liability as signatories to any of the collective bargaining agreements negotiated between the Union and Cumberland Concrete. The Complaint only alleges that the Union and Cumberland Concrete were parties to the CBA. Therefore, Defendants are not bound "by the substantive provisions of a collective-bargaining contract negotiated by their predecessors but not agreed to or assumed by them." *N. L. R. B. v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. 272, 284, 92 S. Ct. 1571, 1580, 32 L. Ed. 2d 61 (1972).

Recognizing this, Plaintiffs allege that all 10 Defendants are required to pay Cumberland Concrete's withdrawal liability as members of a controlled group, or a successor-in-interest. Plaintiff's Complaint, however, utterly fails to allege facts upon which such an extraordinary claim could be made.

> a. *Plaintiffs have not sufficiently pled that BC Concrete or any of the Defendants are successors-in-interest to Cumberland Concrete*

In order to state a claim for relief under the successor liability doctrine, Plaintiffs must show that Defendants (1) continued the operations of its predecessor, Cumberland Concrete, and (2) had notice of potential withdrawal liability. *See Cent. Pennsylvania Teamsters Pension Fund v. Bear Distrib. Co.*, No. CIV.A. 07-CV-3554, 2009 WL 812224, at *8 (E.D. Pa. Mar. 26, 2009). Plaintiffs allege that BC Concrete purchased the assets of Cumberland Concrete and that (upon information and belief) the other nine Defendants are owned and controlled by the one person who owns BC Concrete. Therefore, Plaintiffs theorize, the ten Defendants are a single enterprise and jointly and severally liable for the withdrawal liability of an entirely separate entity, Cumberland Concrete. Thus, if a wholly owned subsidiary of General Motors involved in distributing sewing machines bought the assets of a sewing machine company, and GM has 100 wholly owned subsidiaries involved in similarly diverse businesses, then all 100 subsidiaries and GM share fully and equally the potential liability of the subsidiary that purchased the sewing machine company. The allegations of this Complaint do not begin to reach such an extraordinary result.

Here, the Complaint pleads *no* facts which could give rise to successor liability to BC Concrete let alone the other nine Defendants. It alleges, "[o]n or about August 1, 2017, BC Concrete entered into an asset purchase agreement with Queen City whereby BC Concrete agreed to purchase all of Queen City's assets." Compl. at ¶ 19. However, acquiring Cumberland Concrete's assets is not sufficient to establish BC Concrete's liability; in fact, the general rule is that a company purchasing another company's assets does ***not*** acquire the seller's liabilities. *Demza Masonry LLC*, No. 18CV9607PGSLHG, at *6. Other than blanket and conclusory assertions, the Complaint does not plead any *facts* indicating that BC Concrete continued the

8

operations of Cumberland Concrete or that BC Concrete had notice of potential withdrawal liability.

A plaintiff does not plausibly state a claim for relief when a complaint contains blanket assertions and legal conclusions rather than the factual allegations required to suggest the causes of action could be proven. *Cohen v. Prudential Ins. Co.*, No. CIV.A.08-5319, 2009 WL 2488911, at *7 (E.D. Pa. Aug. 12, 2009). Therefore, the failure to connect BC Concrete's purchase of Cumberland Concrete's assets to the conclusory and unsupported statement that "The BC Concrete Control Group is the 'employer' for purposes of the assessment of withdrawal liability under ERISA" is fatal to its withdrawal liability claim under a theory of successorship liability. Compl. ¶ 25. To the extent the Complaint alleges that BC Concrete or any of the other nine Defendants are a successor-in-interest, it should be dismissed.

> b. *Plaintiffs have not sufficiently pled that BC Concrete or any of the Defendants are members of a controlled group with Cumberland Concrete*

Relying on the principle that "[t]he MPPAA extends responsibility for payment of withdrawal liability beyond the withdrawing employer to 'all employees of trades or businesses (whether or not incorporated) which are under common control,' " *Kero Leasing Corp.*, 377 F.3d at 295 (quoting 29 U.S.C. § 130l (b)(l)), Plaintiffs conclusorily aver that all ten Defendants are a control group.

Fatal to Plaintiffs' Complaint is ERISA's definition of a control group for purposes of determining withdrawal liability. "ERISA defines an employer to include businesses under 'common control' **with the actual employer on the withdrawal date**." *Centra*, 983 F.2d at 502)(emphasis added). Determining whether entities are under common control is a fact-based inquiry. *CID Constr. Servs., LLC*, 2015 WL 5965627, at *5.

9

In the Complaint, Plaintiffs have not alleged that Defendants were under common control with Cumberland Concrete. Plaintiffs have only asserted that the Defendants collectively form a control group *with each other*. Compl. ¶ 22-25. Since withdrawal liability based on common control depends on showing that a company is under common control *with the withdrawing employer*, Plaintiffs have not pled any facts alleging withdrawal liability based on a controlled group claim. Accordingly, the Complaint should be dismissed on this basis as well.

> **B. Count II of Plaintiffs' Complaint Requesting the Enforcement of the Arbitration Award Against Defendants Fails to State a Claim Upon Which Relief May Be Granted; the Arbitrator Had No Authority to Enter Such an Award.**

It is well settled that an arbitrator does not have jurisdiction over an entity which has never been an "employer" within the meaning of the MPPAA. *Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 141–42 (3d Cir. 1997). To quote the Third Circuit in *Galgay*:

> an entity which has never been an employer within the meaning of MPPAA is not subject to the arbitrator's jurisdiction, since 29 U.S.C. § 1401(a)(1) only mandates arbitration for disputes between "an *employer* and the plan sponsor." *Doherty* [*v. Teamsters Pension Tr. Fund of Philadelphia & Vicinity*]„ 16 F.3d [1386,] 1390 (quoting 29 U.S.C. § 1401(a)(1)). Therefore, entity's employer status is a legal question to be resolved by the court. In particular, we held in *Doherty* that the issue of whether persons or entities are "alter egos" or members of the same controlled group is properly resolved in the courts. *Id.* at 1390–91.

*Galgay,* 105 F.3rd at 142 (emphasis in original). Therefore, when an entity claims that it was never an MPPAA employer and is not subject to ERISA's dispute resolution procedures mandating arbitration, the entity's employer status is a legal question to be resolved in the courts. *Doherty v. Teamsters Pension Tr. Fund of Philadelphia & Vicinity*, 16 F.3d 1386, 1390–91 (3d Cir. 1994), *as amended on reh'g* (Mar. 17, 1994); *see also J.H Reid Gen. Contractors*, 2020 WL 6129590, at *4; *Kero Leasing Corp.*, 377 F.3d at 298.

Plaintiffs' Complaint fails to state a claim for relief under Count II, which requests the enforcement of the Arbitrator's January 20, 2021 Order and Final Award ordering BC Concrete to pay reasonable attorney's fees and costs incurred by the Fund in connection with the Arbitration. Simply stated, the Arbitrator did not have the authority to determine whether BC Concrete had withdrawal liability, as that is a legal question for the courts in the first instance. As BC Concrete was not subject to the Arbitrator's jurisdiction, it is not bound by the Arbitrator's Order issuing a final award against BC Concrete. Therefore, Plaintiffs have failed to state a claim for relief under Count II, and it should be dismissed.

## V. CONCLUSION

WHEREFORE, Defendants request that this Court enter an order dismissing Plaintiffs' Complaint and granting such other and further relief as this Court deems just, equitable and proper.

Date:   April 9, 2021

        Respectfully submitted,

        /s/ Francis R. Laws
        Francis R. Laws (Bar No. 02596)
        flaws@tandllaw.com
        Jennifer E. Ciarrocchi (Bar No. 20101)
        jciarrocchi@tandllaw.com
        Thomas & Libowitz, P.A.
        25 S. Charles Street, Suite 2015
        Baltimore, MD 21201
        Tel: 410-752-2468
        Fax: 410-752-0979
        *Attorneys for Defendants*